UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| CHRISTOPHER G., | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | CASE NO. 17-CV-496-FHM |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, Social Security, | ) | |
| Defendant. | ) | |

# OPINION AND ORDER

Plaintiff, CHRISTOPHER G., seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] Plaintiff Christopher G.'s application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) John W. Belcher was held February 24, 2016. By decision dated March 30, 2016, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on July 3, 2017. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 43 years old on the alleged date of onset of disability and 44 years old on the date of the denial decision. He has a twelfth grade education and no past relevant work. [R. 21]. Plaintiff claims to have been unable to work since July 30, 2014[2] due to back problems, severe sleep apnea, chronic back pain, and depression. [R. 161].

## The ALJ's Decision

The ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, obstructive sleep apnea, and obesity. [R. 13]. The ALJ determined that the Plaintiff has the residual functional capacity to perform

---

[2] Plaintiff amended his onset date from January 1, 2011 to July 30, 2014. [R. 30].

less than the full range of sedentary work, specifically, Plaintiff can lift and/or carry, push and/or pull, up to 10 pounds occasionally, and less than 10 pounds frequently; stand and/or walk for 15 minutes at a time, up to a combined total of 2 hours in an 8-hour workday; and sit for up to 6 hours in an 8-hour workday. Plaintiff can occasionally climb stairs, balance, bend, stoop, kneel, couch (sic), and crawl, but never climb ladders, ropes, or scaffolding. [R. 16]. The ALJ determined that Plaintiff had no past relevant work, however, based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 21-22]. Accordingly, the ALJ found Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts the ALJ: 1) failed to properly consider the treating physician's opinion; 2) failed to properly consider Plaintiff's allegations; and 3) the ALJ's RFC assessment is not supported by substantial evidence. [Dkt. 13, p. 4].

## Analysis

### Treating Physician's Opinion

Plaintiff argues that the ALJ failed to properly consider the opinion of Plaintiff's treating physician, Nick Carroll, D.O. [Dkt. 13, p. 6]. A treating physician's opinion is accorded controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. However, if the opinion is deficient in either of these respects, it is not given

3

controlling weight. When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision. An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Watkins v. Barnhart,* 350 F.3d, 1297, 2003 WL 22855009 (10th Cir. 2003). If the ALJ decides that a treating source's opinion is not entitled to controlling weight, he must determine the weight it should be given after considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the treating source's opinion is supported by objective evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether or not the treating source is a specialist in the area upon which an opinion is given; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(d)(2)-(6).

Plaintiff sought treatment with Dr. Carroll at Good Samaritan Health Services from July 2013 through February 2016. [R. 260-324]. On August 5, 2014, Dr. Carroll completed a *Medical Source Opinion of Residual Functional Capacity*, [R. 288], opining Plaintiff was able to stand/walk for less than 2 hours and sit for 4 to 5 hours in an 8-hour work day; frequently lift/carry 15 pounds, and required the use of a cane to walk/stand. Obesity was not found to exacerbate Plaintiff's physical condition. Dr. Carroll did not identify any medical findings to support his assessment. Dr. Carroll also completed a Handicapped Parking Placard Application on August 5, 2014 indicating that Plaintiff was severely limited in his ability to walk due to lumbar degenerative disc disease. [R. 259].

4

On May 5, 2015, Dr. Carroll wrote his opinion on a prescription pad that "Patient is unable – to work unexpected to change in the next 12 months." [R. 290]. In February 2016 Dr. Carroll completed a second *Medical Source Opinion of Residual Functional Capacity* opining that Plaintiff could sit less than 2 hours in an 8-hour workday; stand/walk less than 2 hours in an 8-hour workday; frequently lift/carry 15 pounds; needed the assistance of a cane to walk mostly to prevent falls. Dr. Carroll indicated "old MRI, physical exam, and refractory to conservative treatment" as medical findings to support his assessment. [R. 324].

Plaintiff argues that the ALJ failed to explain why he did not adopt Dr. Carroll's exertional limitations. Plaintiff contends that the ALJ's RFC assessment varies from Dr. Carroll's opinion in significant ways.[3] [Dkt. 13, p. 5]. It is Plaintiff's position that the differences between the ALJ's RFC assessment and Dr. Carroll's exertional limitations are significant because sedentary work generally requires sitting for a total of approximately 6 hours and standing/walking about 2 hours. Further, the total hours Plaintiff could engage in exertional activity given Dr. Carroll's opinions is less than 8 hours thereby eliminating competitive work. [Dkt. 13, p. 6]. An ALJ cannot, without explanation, adopt some restrictions assessed by a physician and reject others that the physician also assessed. See *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); see also *Frantz v . Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (relying on *Haga*); *Winfrey v. Chater*, 92 F.3d 1017, 1024 5 *5 (10th Cir. 1996) (stating that the RFC did not accurately reflect a claimant's

---

[3] Dr. Carroll opined Plaintiff could sit for 4 to 5 hours while the ALJ found Plaintiff could sit for at least 6 hours. Dr. Carroll also found that Plaintiff could stand/walk less than 2 hours while the ALJ found could stand/walk for a total of 2 hours for 15 minutes at a time.

5

impairments when the ALJ found a medical opinion entirely credible, but did not include all assessed limitations).  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).   The ALJ addressed Dr. Carroll's opinion as follows:

> I give partial weight to the opinion of Dr. Carroll, as the record as a whole, including the MRI study showing some degenerative disc disease of the lumbar spine (B5F) would reasonably result in some limitations with regard to walking, standing and lifting. However, neither the MRI findings, nor the treatment records of Dr. Carroll to that date would support the use of a cane. Therefore, in that respect of the opinion of Dr. Carroll is very little weight.  [R. 18-19].
>
> * * *
>
> While the record reflects, the claimant continued to be seen by Dr. Carroll for some time (B11F), and continued to complain of continued low back pain and left leg numbness, there was never any recommendation for surgical intervention.  The claimant was apparently able to function without extensive medical treatment or even physical therapy.  While he did apparently receive at least one injection (B11F, Pg. 3), these were not routinely prescribed. Additionally, the claimant did not require ongoing narcotic based pain relieving medications in spite of his allegations of quite limiting pain  These inconsistencies diminish the weight of the claimant (sic) allegations as well as the treating physician's opinions.  [R. 19].

The ALJ gave substantial, but not full weight to Dr. Carroll's opinion of February 2016 noting that he agreed Plaintiff's degenerative disc disease would limit him to a reduced range of sedentary work, but did not find evidence to support Dr. Carroll's extreme limitation with respect to sitting or the use of a cane.  [R. 19].

The ALJ thoroughly discussed Dr. Carroll's medical records and specifically addressed the sitting/standing/walking limitations noting that while he agreed Plaintiff's degenerative disc disease would limit him to a reduced range of sedentary work, there was no evidence to support Dr. Carroll's extreme limitation with respect to sitting, nor was there support for his opinion regarding the use of a cane.[4] The MRI showed only a slight flattening of the nerve root and not severe impingement. [R. 258]. While the MRI showed degenerative disc disease and there was evidence of tenderness to palpation which supported Plaintiff's claim of back pain, there was no objective evidence to support radiculopathy such as electromyogram and nerve conduction studies. The ALJ also noted that there was never a recommendation for physical therapy, surgical intervention, or narcotic based pain relieving medications. The ALJ concluded that Dr. Carroll's opinion was conclusory and provided very little explanation of the evidence relied upon in forming his opinion. [R. 18-19]. Plaintiff takes issue with the ALJ's decision claiming Plaintiff was receiving treatment from a charity based medical facility that did not prescribe narcotic medications and further, his referral to an orthopedist was not accepted. However, the court finds the ALJ adequately explained his reasons supported by the record as to why he did not adopt Dr. Carroll's exertional limitations.

Plaintiff also argues that the ALJ failed to cite any contradictory evidence, [Dkt. 13, p. 7], and directed the court's attention to evidence of Plaintiff falling, [R. 293], and positive SLR on August 11, 2015 which he contends indicates lumbosacral radicular irritation. [R. 295]. However, after reviewing the record, the court concludes the ALJ considered the

---

[4] Plaintiff concedes in his Reply Brief that Dr. Carroll's opinion he needs a cane has limited support. [Dkt. 16, p. 1].

7

pertinent evidence of Plaintiff's back impairment. Basically, Plaintiff is dissatisfied with the weight given the evidence by the ALJ. Plaintiff essentially asks the court to reweigh the evidence. This it cannot do. *Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir. 2004) citing *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995). The evidence relied upon by the ALJ is evidence a reasonable mind could accept as adequate to support a conclusion, and the evidence relied upon by the ALJ is not overwhelmed by other record evidence. The court finds that the ALJ provided appropriate reasons supported by the record for the weight he gave Dr. Carroll's opinions.

## Plaintiff's Allegations

Plaintiff argues that the ALJ did not properly consider his subjective complaints and symptoms in assessing his RFC. Further, the ALJ did not provide any supported reasoning for not accepting the Plaintiff's allegations of severe back pain. [Dkt. 13, p. 8-10]. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)(citation, brackets, and internal quotation marks omitted).

The ALJ reduced Plaintiff's credibility because x-ray of the lumbar spine revealed only straightening of the normal lordosis and mild facet arthrosis. Physical examination in February 2014 revealed Plaintiff's back was non-tender with full range of motion and only mild left sacroiliac joint tenderness. An MRI performed in March 2014 showed mild to moderate lumbar spondylosis at L3, L4-5, and L5-S1. There was some bilateral forminal stenosis with slight flattening of the exiting L5 nerve roots and a left subarticular zone

annular fissure at L4-L5. Plaintiff was recommended for a CPAP machine and reported to have tolerated it well. However, in August 2014 Plaintiff complained of daytime somnolence because he could not tolerate the CPAP machine. The ALJ also noted that Plaintiff worked only sporadically prior to the alleged disability onset date which raises a question as to whether Plaintiff's continuing unemployment is actually due to medical impairments. [R. 18-19, 20, 228, 245, 255-257, 258].

The court finds that the ALJ performed an adequate credibility analysis. The ALJ cited numerous grounds, tied to the evidence, for the credibility finding, including Plaintiff's subjective statements which were inconsistent with the objective medical evidence. [R. 18-20]. The ALJ thus properly linked his credibility finding to the record, therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## Residual Functional Capacity

Plaintiff argues that the ALJ did not properly consider his alleged daytime somnolence caused by his severe sleep apnea. [Dkt. 13, p. 9]. The ALJ, however, specifically discussed Plaintiff's sleep apnea. The ALJ noted that Plaintiff initially tolerated the CPAP machine well but later could not tolerate it. The ALJ concluded that if his sleep problems were truly as severe as Plaintiff alleged, he would have made more of an effort to resolve his intolerance of the CPAP machine. [R. 20]. While Plaintiff argues that he did make efforts by trying several different CPAP masks, it was the ALJ's responsibility to weigh this evidence and the ALJ's decision is supported by substantial evidence.

9

Plaintiff also argues that the ALJ found Plaintiff's sleep apnea was a severe condition, yet the ALJ's RFC assessment did not contain any limitations related to that impairment. [Dkt. 13, p. 11]. The step two severity finding and the RFC finding involve different considerations. To find a "severe" impairment at step two requires only a threshold showing that the claimant's impairment has "more than a minimal effect on [her] ability to do basic work activities." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988). A step two determination that Plaintiff's degenerative disc disease of the lumbar spine, obstructive sleep apnea, and obesity are "severe" only allows the sequential process to proceed. It does not address the degree of work-related functional limitations resulting from the "severe" impairments.

An ALJ does not err by failing to match each step two impairment to a work-related limitation in the RFC. Rather, in developing the RFC the ALJ considers all of the medical and other evidence to determine whether the record supports the existence of physical, mental, sensory, and other limitations in the ability to perform work-related functions. *See* 20 C.F.R. §§ 404.1545, 416.945. The question then is not whether the RFC contains the "severe" impairments, but whether the RFC accounts for the work-related limitations that flow from those impairments. Thus, the ALJ's failure to incorporate each severe impairment found at step two into the RFC finding is not error.

**Conclusion**

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 11th day of September, 2018.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE